UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
YAIRA PUJOLS and ROMAN A. PUJOLS,          **JOINT PRE-TRIAL ORDER**

                                                     Plaintiffs,

            - against -

                                                               Doc. #: 10-CV-4495

BJ'S WHOLESALE CLUB, INC.

                                               Defendant.
-----------------------------------------------------------------X

## I.  **Estimated Length of Trial**

The parties estimate that this trial will require four days

## II.  **Undisputed Facts**

Defendant, BJ'S WHOLESALE CLUB, INC., operated a wholesale club for its members at a portion of the premises located at 825 Pelham Parkway, Pelham, New York. The club was known as BJ's Wholesale Club. Plaintiff, YAIRA PUJOLS, currently thirty-six (36) years of age, was a member of said "club." On August 8, 2009, at approximately 2:30 p.m., plaintiff, Yaira Pujols, was lawfully on defendant's premises when she reported to employees of defendant and police that she had been caused to slip and fall in a store aisle as the result of a clear liquid substance on the floor, identified by plaintiff at the time as water. Immediately prior to the incident, plaintiff had been walking down the aisle looking straight ahead. Upon initially entering the aisle, she had observed other customers further down the aisle walking with carts in the same direction she was walking. These customers had already passed the area where plaintiff's incident would occur. Plaintiff did not observe the liquid condition until after her incident. She does not know who created the condition, when it was created or how long it existed on the floor prior to her incident. Plaintiff does not know of anyone

who observed, was aware of or reported the condition to defendant prior to the incident, or the identity of any witnesses to her fall.

In connection with the reported incident, defendant's employee, Replenishment Manager Karl Diego, completed a store incident report which reflects that plaintiff reported she slipped on water in an aisle and that Mr. Diego personally walked the area of the incident and found no water on the floor.

Plaintiff was taken from the premises by ambulance to the Emergency Room of Sound Shore Medical Center in New Rochelle, New York where she reported injury to her left knee from a slip and fall an hour earlier. Plaintiff denied any history of a prior knee injury to this healthcare provider. Following her release from the hospital later that day with a clinical impression of knee contusion, plaintiff came under the care of Dr. Randall V. Ehrlich and MedAlliance Medical Health Services at 625 E. Fordham Road, Bronx, New York. In presenting to Dr. Ehrlich and MedAlliance Medical Health Services, plaintiff denied any prior history of left knee, left shoulder, back or neck injury.

Prior to the subject incident, plaintiff had sought treatment with her primary care physician, Dr. Evelyn Cordero, 941 Castlehill Avenue, Bronx, New York and underwent x-rays of her left shoulder and a cervical MRI at University Diagnostic Medical Imaging, P.C., 1200 Waters Place, Bronx, New York. Plaintiff also sought treatment prior to the subject incident with Dr. Andrew Rosen NY-Conn Orthopaedic and Rehabilitation Specialists, PLLC, 1500 Astor Avenue, Bronx, New York for complaints of bilateral knee pain for which Dr. Rosen took x-rays of both knees and recommended physical therapy.

Prior to and at the time of the subject incident, plaintiff was employed by JP Morgan Chase as Lead Teller/Customer Service Representative at Branch #74 located at 784 Castle Hill Avenue, Bronx, New York, and had medical coverage through her employer with Aetna as policyholder #BBH7MGDA. Plaintiff has not returned to her employment since the incident of August 8, 2009. She applied for and received disability benefits through coverage with The Hartford. In connection with her disability claim, The Hartford conducted video surveillance of plaintiff in December 2010, which video was subsequently shown to plaintiff by The Hartford's investigator. On the date of the incident, plaintiff, YAIRA PUJOLS, was married to plaintiff, ROMAN A. PUJOLS.

## III.  Plaintiff's Contentions of Fact

The plaintiff, Yaira Pujols, was caused to slip and fall on August 8, 2009, by a hazardous and defective condition existing on the defendant's premises, to wit, a slippery liquid substance on the floor thereat. Based on testimony of plaintiff Yaira Pujols. That the aforementioned hazardous condition existed for an extended period of time prior to the subject incident such that the defendant, in the exercise of reasonable care, should have known of it and remedied it. Based on testimony of plaintiffs, Yaira Pujols, Roman A. Pujols and Karl Diego.

The defendant operated a video surveillance system inside the premises, viewed a recording of the location where the incident occurred, at the time it occurred and destroyed said recording. Based on testimony of Karl Diego.

As the result of the subject incident, the plaintiff, Yaira Pujols, sustained serious and severe personal injuries, necessitating medical treatment including, but not limited

to, two (2) surgical procedures. These injuries resulted in pain, suffering and the impairment of plaintiff's ability to enjoy life and further, disabled and continue to disable her from performing the duties of her employment by JP Morgan Chase. The injuries to plaintiff's Left Knee and Left Shoulder have resulted in permanent disabilities. Based on testimony of plaintiff, Yaira Pujols, Dr. Randall V. Ehrlich and medical records.

### IV.   Plaintiff's Contentions of Law

The defendant had a duty to maintain it's premises in a reasonably safe condition. Basso v. Miller, 40 NY2D 233, 386 N.Y.S.2d 55. Constructive Notice of a hazardous condition may be inferred where defendants employees were in the immediate vicinity of the dangerous condition and could have remedied it. Rose v. Da Ecib, 259 A.D.2d 258, 686 N.Y.S.2d 19. Actual notice of a wet condition may be established by evidence that a wet floor sign was placed near the accident scene. Hilsman v. Sarwil Assoc., L.P., 13 A.D.3d 692, 786 N.Y.S.3d 225

### V.   Defendant's Contentions of Fact

On August 8, 2009, plaintiff reported to BJ's employee, Replenishment Manager Karl Diego, that she had slipped and fallen on water in the club's tissue aisle. (See EBT of Karl Diego at pages 68, 70) As a result, Mr. Diego immediately went over to and inspected the entire area in and around the tissue aisle, including the main aisle which runs perpendicular to the tissue aisle along the outer wall of the club which plaintiff later identified at her deposition as the actual location of her incident by marking an "X" on a store floor plan. (See EBT of Karl Diego at pages 72- 73; EBT of Plaintiff, Yaira Pujols,

at pages 25-26; Store Floor Plan Marked as Defendant's Exhibit C at EBT of Plaintiff, Yaira Pujols)  Mr. Diego's inspection revealed that there was no water anywhere in the area. (See EBT of Karl Diego at page 73)  Later that day, Mr. Diego reviewed club surveillance video to determine whether plaintiff's incident had been captured, but found no video of the incident or of plaintiff walking down the aisle she marked with an "X" at her deposition.  The first and only video Mr. Diego found of plaintiff was of her walking down the center aisle of the club towards the front of the store. (See EBT of Karl Diego at pages 88-89).  At the time of the incident, the club's surveillance cameras captured the main aisles, but not all adjacent aisles, including the tissue aisle where Mr. Diego initially believed the incident occurred and the aisle from which plaintiff entered the center aisle were under surveillance. (See EBT of Karl Diego at pages 84, 91).

In addition to his post-incident inspection, on August 8, 2009, as part of his regular duties as Replenishment Manager, Mr. Diego, had inspected the area of plaintiff's incident approximately 5 minutes prior thereto and found the aisle to be clean and dry, with no debris or liquid on the floor. (See EBT of Karl Diego at pages 12, 25, 54-55, 58, 69).  BJ's store protocol mandated that all managers on duty continually walk the club aisles to inspect the floors for any conditions, and all club employees were trained to walk the floors and observe everything. (See EBT of Karl Diego at pages 12, 25)  In the event a manager or employee encounters a condition, her or she is required to report the condition and stay at the location until it is remedied.  (See EBT of Karl Diego at page 67) On August 8, 2009, the only complaint BJ's received regarding the condition of the club's floor was that of plaintiff.  (See EBT of Karl Diego at page 68).

In direct conflict with the pre-incident medical records of Dr. Andrew Rosen and Dr. Evelyn Cordero, and the pre-incident diagnostic testing reports of University Diagnostic Medical Imaging which evidence evaluation and treatment for complaints of left knee, left shoulder, back and neck pain, plaintiff specifically denied any prior injury to her left knee, left shoulder, back and neck both at her deposition and when presenting to those healthcare providers who evaluated and treated her after the incident. (See EBT of Plaintiff, Yaira Pujols, at pages 40, 69, 75 and 78; Medical Report of Dr. Andrew Rosen dated 11/24/08; Medical Reports of Dr. Evelyn Cordero dated December 2, 2008; June 5, 2009; and July 11, 2009; University Diagnostic Medical Imaging Reports of Left Shoulder and Cervical X-rays dated December 9, 2008 and Cervical MRI dated July 24, 2009; Plaintiff's MRI Patient Questionnaire dated July 24, 2009; Sound Shore Medical Center Emergency Room Records dated August 8, 2009; MedAlliance Reports of Dr. Randall Ehrlich dated August 12, 2009, Dr. Ali Guy dated August 17, 2009; Dr. Sana Bloch dated August 28, 2009 and March 12, 2010; Reuven Guy, P.A. dated August 17, 2009)

Plaintiff did not complain of left shoulder pain until two months after the incident, and did not begin receiving physical therapy for her shoulder until she was re-evaluated with complaints of shoulder pain for three weeks on June 23, 2010. (See EBT of Plaintiff, Yaira Pujols, at page 75; Report of Anjie Zozobrado dated June 23, 2010) Moreover, plaintiff's post-incident lumbar MRI of August 21, 2009 was normal; her left knee MRI of August 24, 2009 showed only joint effusion, no tears; her cervical MRI of August 25, 2009 showed no changes from the pre-incident study; and her left shoulder

MRI of December 16, 2009 was unremarkable and specifically noted that the labrum was intact. (See MRI Reports of University Diagnostic Medical Imaging)

Plaintiff's medical history does not fit the history of the injuries alleged. (See IME Report of Dr. Michael J. Katz) The disparity in findings between her December 16, 2009 and June 25, 2010 left shoulder MRIs indicates that there was another accident between the two studies, and the latter findings and subsequent left shoulder surgery had nothing to do with the subject incident. (See IME Report of Dr. Michael J. Katz). Plaintiff's left knee arthroscopy also had nothing to do with the incident of August 8, 2009 as it resulted from pre-existing patellar instability. (See IME Report of Dr. Michael J. Katz) Plaintiff's left knee MRI indicated only a small joint effusion and no other findings, and does not match the surgical report of Dr. Ehrlich whose procedure was similar to the pre-incident pathology reported by Dr. Tyler Lucas of instability in the patella on the contra-lateral side. (See IME Report of Dr. Michael J. Katz; Records of Dr. Tyler Lucas)

If anything, as a result of the alleged incident, plaintiff sustained only resolved cervical and lumbar strains and a resolved left shoulder contusion. (See IME Report of Dr. Michael J. Katz) Plaintiff is currently not disabled and is capable of full time full duty work and all activities of daily living, including driving, walking normally without the use of any assistive devices, bending, carrying, traversing steps, lifting heavy items and raising her arms overhead without incident. (See IME Report of Dr. Michael J. Katz; Surveillance Video of The Harford; Investigator Reports of The Hartford)

## VI. Defendant's Contentions of Law

To establish a prima facie case of negligence in a premises liability action, a plaintiff must demonstrate that defendant created the condition which caused the accident or had actual or constructive notice of said condition. Hartley v. Waldbaum, Inc., 69 A.D.3d 902, 893 N.Y.S.2d 272; Kramer v. K-Mart Corp., 226 A.D.2d 590, 641 N.Y.S.2d 130 (2nd Dept. 1996). Actual notice, by definition, requires proof that defendant was aware of the presence of the alleged condition prior to the happening of plaintiff's incident. See, Cameron v. Bohack, 27 A.D.2d 362, 280 N.Y.S.2d 483 (2nd Dept. 1967); Bogart v. F.W. Woolworth Co., 24 N.Y.2d 936, 310 N.Y.S.2d 995 (1969). "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." Gordon v. American Museum of Natural History, 67 N.Y.2d 836, 501 N.Y.S.2d 646 (1986). See also, Kerson v. Waldbaums Supermarket, 284 A.D.2d 376, 725 N.Y.S.2d 676 (2001). The mere happening of an occurrence does not establish liability on the part of a defendant. Lewis v. Metropolitan Transportation Authority, 99 A.D.2d 246, 472 N.Y.S.2d 368 (1st Dept. 1984). Where, as is the case herein, the evidence is palpably insufficient to establish defendant's creation or actual or constructive notice of *any* defective condition at the time and place of plaintiff's incident, there is no factual issue to submit to the jury and summary judgment is warranted as a matter of law. See, Ganci v. National Wholesale Liquidators of Farmingdale, Inc., 20 A.D.3d 551 (2nd Dept. 2005); Nichilo v. B.F.N. Realty Associates, Inc., 19 A.D.3d 666 (2nd Dept. 2005).

## VII. Proposed Witnesses

### For Plaintiff:

Yaira Pujols

Roman R. Pujols

Karl Diego

Dr. Randall V. Ehrlich

| **Defendant's Objection:** | Defendant objects to this witness testifying as a medical expert on the grounds that plaintiffs have failed to provide a proper expert exchange for Dr. Ehrlich pursuant to the F.R.C.P., including a narrative of his treatment, records, medical opinion and anticipated testimony, or a list of II cases in which he has testified as a an expert within the last four (4) years. |

### For Defendant:

Karl Diego

Darren Dennison

> Plaintiffs Object to this witness as Defendant did not provide the location of this witness so that he could be deposed.

Michael J. Katz, M.D.

Evelyn Cordero, M.D.

Andrew Rosen, M.D.

Gary Tubman, M.D. of University Diagnostic Medical Imaging, P.C.

David H. Noble, M.D. of University Diagnostic Medical Imaging, P.C.

Ralph Lichtenstein, M.D. of University Diagnostic Medical Imaging, P.C.

## VIII. Exhibits to Be Offered in Case in Chief

### By Plaintiff:

1. Sound Shore Medical Center Emergency Room record of 8/8/09

   **Defendant's Objection:** Plaintiffs have failed to exchange a copy this exhibit, and have not otherwise identified the specific records included in this exhibit

2. Surgicare Ambulatory Surgery Center of NY Operative Report/record of 11/19/09

   **Defendant's Objection:** Plaintiffs have failed to exchange a copy of this exhibit, and have not otherwise identified the specific records included in this exhibit

3. Surgicare Ambulatory Surgery Center of NY Operative Report/record of 8/19/10

   **Defendant's Objection:** Plaintiffs have failed to exchange a copy of this exhibit, and have not otherwise identified the specific records included in this exhibit

4. Dr. Randall V. Ehrlich/MedAlliance Office records

   **Defendant's Objection:** Plaintiffs have failed to exchange a copy of this exhibit, and have not otherwise identified the specific records of Dr. Ehrlich and MedAlliance included in this exhibit

5. Incident Report

6. Diagram of Premises

   **Defendant's Objection:** Plaintiffs have failed to exchange a copy of this exhibit, and have not otherwise identified whether this exhibit consists of the unmarked diagram exchanged by defendant, the diagram marked by plaintiff at the time of her deposition and/or the diagram marked by defendant's witness at the time of his deposition

7. Disability Determination of the Social Security Administration

**Defendant's Objection:** Plaintiffs have failed to exchange a copy of this exhibit or provide defendant with any copies of records related to plaintiff's application for and receipt of social security benefits as required pursuant to the F.R.C.P,

## By Defendant:

A. Plaintiff's Response to Interrogatories

B. Plaintiff's Deposition Testimony,
   1. page 40
   2. page 69
   3. page 75
   4. page 78
   5. page 79

C. Store Floor Plan Marked as Defendant's Exhibit C at Plaintiff's Deposition

D. BJ'S Incident Report

E. Medical Records of NY-Conn/Empire State Orthopaedics consisting of:
   1. Report by Dr. Andrew Rosen dated November 24, 2008
   2. Report by Dr. Tyler Lucas dated August 16, 2007
   3. Physical Therapy Evaluation dated November 8, 2007

   Plaintiff's objects to this as Hearsay

F. Medical Records of Dr. Evelyn Cordero
   1. dated December 2, 2008
   2. dated June 5, 2009
   3. dated July 11, 2009

   Plaintiffs objects to this as Herasay

G. Emergency Room Record of Sound Shore Medical Center dated August 8, 2009

H. University Diagnostic Medical Imaging, P.C. Records consisting of:
   1. Report to Dr. Evelyn Cordero re Plaintiff's December 8, 2008 Left Shoulder/Cervical X-rays;
   2. MRI Patient Questionnaire Executed by Plaintiff on July 24, 2009 for Cervical MRI;
   3. Report to Dr. Evelyn Cordero re July 24, 2009 Cervical MRI
   4. Report to Dr. Ali Guy re August 21, 2009 Lumbar MRI
   5. Report to Dr. Randall Ehrlich re August 24, 2009 Left Knee MRI
   6. Report to Dr. Randall Ehrlich re August 25, 2009 Cervical MRI
   7. Report to Dr. Evelyn Cordero re December 16, 2009 Left Shoulder MRI
   8. Report to Dr. Evelyn Cordero re March 26, 2010 Lumbar X-rays
   9. Report to Dr. Sana Bloch re March 17, 2010 Brain MRI
   10. Copy of Plaintiff's Aetna Insurance Card, Policy #BBH7MGDA

I. MedAlliance Medical Reports consisting of:
   1. Report by Dr. Randall Ehrlich dated August 12, 2009
   2. Report by Dr. Randall Ehrlich dated July 28, 2010
   3. Report by Dr. Ali Guy/Reuven Guy, P.A. dated August 17, 2009
   4. Report by Dr. Sana Bloch dated August 28, 2009
   5. Report by Dr. Sana Block dated March 12, 2010
   6. Report by Anjie Zozobrado, P.T. dated June 23, 2010
   7. Billing Records for Plaintiff's Treatment
   8. Letter to MedAlliance from Defense Counsel dated November 8, 2010 requesting records pursuant to plaintiff's authorization for same

J. IME Report of Dr. Michael J. Katz dated March 24, 2011

   Plaintiffs objects to this as Hearsay.

K. Investigative File of The Hartford re Plaintiff's Disability Claim consisting of:
   1. Surveillance Video of Plaintiff Obtained in December 2010
   2. Investigative Reports of HUB Enterprises to The Hartford
      a. dated December 9, 2010
      b. dated January 3, 2011
   3. Report re March 9, 2010 Interview of Plaintiff re Surveillance

   Plaintiffs objects to this as it was not exchanged and it is hearsay.

L. Surveillance Video Stills of Plaintiff consisting of:
   1. Plaintiff lifting her daughter into back seat of SUV using left arm
   2. Plaintiff leaning into car carrying shopping bag in her left hand
   3. Plaintiff carrying shopping bag and pocketbook on her left arm
   4. Plaintiff walking down steps of her home carrying items in her raised left arm
   5. Plaintiff carrying various items inn her arms as she walks
   6. Plaintiff lifting broom overhead to knock snow off front porch awning

   Plaintiffs objects to this as it was not exchanged.

M. Defendant's Path of Travel Photographs
   1. Photograph
   2. Photograph
   3. Photograph
   4. Photograph
   5. Photograph
   6. Photograph
   7. Photograph
   8. Photograph
   9. Photograph
   10. Photograph

N. Defendant's Path of Travel Photographs with Described Water Condition
   1. Photograph
   2. Photograph
   3. Photograph
   4. Photograph
   5. Photograph
   6. Photograph

   Plaintiffs' object to this is as these were not exchanged.

Dated:   Mineola, New York
           June 9, 2011

                              s/ Howard I. Trepp

                              HOWARD I. TREPP, ESQ.
                              HOBERMAN & TREPP, P.C.
                              Attorneys for Plaintiffs
                              2622 East Tremont Ave.
                              Bronx, New York 10461
                              (718) 625-1100
                              Email: HIT1@Cornell.edu


                              s/ Bruce A. Torino

                              BRUCE A. TORINO, ESQ. (BT7772)
                              TORINO & BERNSTEIN, P.C.
                              Attorneys for Defendant
                                    200 Old Country Road, Suite 220
                              Mineola, New York 11501
                              (516) 747 - 4301
                              Email: Bruce.Torino@torinoandbernstein.com